IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

IN RE:                              )
                                    )
    STEPHEN MARK KEEPPER            )        Case No. 05-20921-7-drd,
                                    )
                    Debtor.         )

## MEMORANDUM OPINION

The matter before the Court in this case is the motion to dismiss filed by the United States

Trustee ("UST") pursuant to 11 U.S.C. § 707(b) for substantial abuse.  This Court has jurisdiction

over the motion pursuant to 28 U.S.C. §§ 1334(b), 157(a) and 157(b)(1).  This is a core proceeding

which this Court may hear and determine pursuant to 28 U.S.C. § 157(b)(2)(A).  The following

constitutes this Court's Findings of Fact and Conclusions of Law rendered in accordance with

Rule 52 of the Federal Rules of Civil Procedure made applicable to this proceeding by Rules 7052

and 9014(c) of the Federal Rules of Bankruptcy Procedure.  For the reasons set forth below, the

Court grants the UST's motion to dismiss the case pursuant to §707(b) and will enter an order

dismissing the case, unless within 20 days from the date of the entry of the Court's order, the debtor

converts the case to a Chapter 13 proceeding.

### I. FACTUAL BACKGROUND

On April 12, 2005, Stephen Mark Keepper ("Debtor") filed a petition for relief under

Chapter 7 of the Bankruptcy Code.  Debtor recently filed amended Schedules I and J showing

income earned and expenses incurred for both the Debtor and his spouse.  Although Debtor's

spouse has not filed for relief, the UST contends, and this Court has previously held, that

consideration of the income of the non-filing spouse is appropriate in conducting a substantial

abuse analysis pursuant to § 707(b). *See In re Reeves*, 327 B.R. 436, 442 (W.D.Mo.2005).

Debtor does not appear to contest this position and the Court will therefore consider the evidence

of the income and expenses of both Debtor and his non-filing spouse.

Debtor is a wholesale clothing salesman who sells on commission and earns a small

amount of additional income from selling jewelry for JCPenney.  His spouse is also employed.

Debtor's amended schedules show a combined net monthly income of $8,151.64 per month.  The

UST contends that Debtor's records show commission income in an amount in excess of that

shown on the amended schedules and that the Debtor's actual average monthly income is

approximately $952.51 higher.  That discrepancy results from different calculations of the

Debtor's monthly commission income from Haiks, Inc.  Debtor receives a monthly sum of

$3,000.00 from Kuperhand, Inc., about which there is no dispute.  There is likewise no

disagreement as to Debtor's average monthly income from JCPenney of approximately $178.02.

The UST actually calculates an average monthly income for Debtor's spouse slightly less than

that scheduled by the Debtor.  The Court will use the UST's figure of $3,983.06 per month.  The

Debtor contends that the UST's figures fail to take into account certain offsets taken by Haiks,

Inc. in several months and reduced commission income for the months of May, June and July

which reduce the average monthly projected income.

On the expense side, the Debtor's amended schedules show $8,022.48.  Of that total,

$4,926.31 are Debtor's expenses.  Of the Debtor's scheduled expenses, $2,975.00 is the

scheduled amount of monthly business expenses.  The UST argues that the Debtor's business

expense amount is significantly overstated in comparison to amounts shown on tax returns for

previous years, particularly the year 2004.  The UST also argues that the household's expenses

are approximately twice the average expense for a family of three according to the United States

Census Bureau.  In particular, the UST questions the combined gasoline and transportation expenses shown by the Debtor.  According to the UST's calculations, the gasoline expense is overstated by approximately $959.00 based upon a hypothetical calculation starting from the mileage figures shown in Debtor's 2004 tax return and assuming a vehicle fuel efficiency of 17 miles per gallon and an estimated cost of gasoline of $2.00 per gallon.  Finally, the UST points out that many of the Debtor's expenses are not documented by receipts or canceled checks and are therefore unreliable.

Debtor responds that he prepares monthly expense reports, copies of which were introduced into evidence, that most of the expenses are paid in cash as a result of previous problems the Debtor had with managing credit card debt and that the expense reports accurately demonstrate the actual monthly expenses incurred by Debtor in the conduct of his business.

The UST points out that the Debtor has scheduled unsecured debt of $40,882.00.  Based on the UST's calculation, the Debtor has understated his net disposable income available to fund a Chapter 13 plan by $2,046.64 per month.  The UST points out that just over half that, or $1,159.05 per month, would, after deducting the Trustee's fee, provide plan payments over a period of 36 months, which would pay 100% of the Debtor's scheduled unsecured debt.  The amount of $588.00 per month would provide a 50% dividend to the Debtor's unsecured creditors.

## II. DISCUSSION AND ANALYSIS

### A.  Applicable Legal Standards

Dismissal for substantial abuse is governed by § 707(b) which authorizes the Court, on its own motion or on motion by the United States Trustee, to dismiss a case by an individual debtor whose debts are primarily consumer debts if it finds that the granting of relief would be a

substantial abuse of the provisions of Chapter 7.  In order to prevail on a motion to dismiss for

"substantial abuse" pursuant to § 707(b), the United States Trustee must demonstrate that the

debtor's debts are primarily consumer debts and that the granting of relief would be a substantial

abuse of the provisions of Chapter 7.  *In re Praleikas*, 248 B.R. 140, 143 (Bankr. W.D. Mo.

2000).  Because a presumption exists in favor of granting relief to a debtor, the burden of proof

is on the United States Trustee to show that a debtor's case should be dismissed pursuant to

§ 707(b).  *In re Regan*, 269 B.R. 693, 696 (Bankr. W.D. Mo. 2001).

The phrase "substantial abuse" is not defined in the Bankruptcy Code.  The Eighth

Circuit has, however, indicated that "a Chapter 7 debtor's ability to fund a Chapter 13 plan is

'the primary factor to be considered in determining whether granting relief would be a

substantial abuse.'" *Praleikas*, 248 B.R. at 145 (citing *Stewart v. Koch (In re Koch)*, 109 F.3d

1285, 1286 (8th Cir. 1997)); *see also*, *In re Walton*, 866 F.2d 981, 984-85 (8th Cir. 1989); *In re

Bicsak*, 207 B.R. 657, 662 (Bankr. W.D. Mo. 1997); *Regan*, 269 B.R. at 696.  While the Debtor's

future ability to repay is the primary factor to be considered and the starting point for analysis in

a § 707(b) case, the court may also take into consideration the debtor's good faith and any

unique hardships.  *Walton*, 866 F.2d at 983; *In re Scobee*, 269 B.R. 678, 680 (Bankr. W.D. Mo.

2001); *Regan*, 269 B.R. at 699.   In this case, there is no question the Debtor's debts are

primarily consumer debts.  The issue is whether, under the circumstances, the granting of relief

would constitute a substantial abuse.

### b. Substantial Abuse Analysis

### 1.  Income

The UST contends that the Debtor has significantly understated his average monthly

commission income from Haiks, Inc.  As noted above, there appears to be no dispute between

the parties with respect to the other components of the Debtor's average net monthly income.

The Debtor contends that the UST's analysis is flawed in two respects.  First, the UST has failed

to take into consideration offsets in the amount of approximately $400.00 taken in two months

which reduce the average monthly income received.  Second, the UST's analysis considered

commission income for the months of January through April only and updated information

provided by the Debtor on Exhibit 8 reflected that commissions for subsequent months were in

significantly reduced amounts.  According to the Debtor's calculations, the average monthly

commission income from Haiks, Inc. is only approximately $935.00 rather than the $1,887.70

estimated by the UST.  Even according to the Debtor's figures, however, as shown on the

amended schedules, the household's average monthly income is $8,151.64.  Because of the

Court's assessment of the evidence with respect to the Debtor's average monthly business

expenses and the impact of that finding on the household's average monthly expenses and

therefore its disposable income, the Court need not resolve the difference of opinion between the

UST and the Debtor with regard to commission income from Haiks, Inc.  Accordingly, for

purposes of the substantial abuse analysis, the Court will assume the Debtor's figures to be

correct and assume that the amount shown on the amended schedules of $8,151.64 is the

household's average monthly net income.

### 2.  Expenses

The amended schedules show expenses of $8,022.48.  One substantial component of that

figure is the $2,975.00 shown as average monthly business expenses on the Debtor's separate

Schedule J.  Although the Debtor's schedule shows business expenses in the amount of

$2,975.00 per month, the evidence produced at trial, particularly his own monthly expense sheets

(Debtor's Exhibits B through I) and the summary of his monthly expenses provided to his

counsel and introduced into evidence as Exhibit 8, shows that the average monthly expenses are in fact a good deal lower than that.  Averaging the amounts listed in the third column of Exhibit 8 for monthly expenses, (and excluding the last entry for the month of August, which was incomplete as of the time of trial), yields a monthly average business expense of $1,881.20.  This compares to the $2,975.00 in Debtor's Schedule J.  Accordingly, based upon this evidence, the Debtor's monthly business expenses are overstated by the sum of $1,093.80.  The Court should note that it reaches this result largely by accepting the Debtor's own evidence.  As the Debtor points out, the UST's calculation of the Debtor's alleged overstatement of his gasoline expense is unpersuasive given what appear to be inaccurate assumptions with regard to both miles per gallon and gasoline price per gallon.  The UST assumed $2.00 per gallon, which the Debtor correctly observed is, under current market conditions, a significant underestimation of the likely price the Debtor will have to pay for gasoline.  In addition, the Debtor testified that he drives a large mobile home which achieves a gas mileage far below the 17 miles per gallon assumed by the UST.  The Court also notes, however, that this finding with respect to the average monthly business expenses does appear to be consistent with the numbers shown on Schedule C of the Debtor's 2004 tax return.[1]  Adjusting the Debtor's scheduled expenses to the amounts shown by the evidence yields an average total monthly expense amount of $6,928.65.  When compared with an average net monthly income of $8,151.64, the evidence demonstrates that the household should have the sum of $1,222.96 available to make payments under a Chapter 13 plan.  As indicated by the UST's calculation, that would be sufficient to pay all of the Debtor's unsecured creditors in full.

Because, according to the evidence, the Debtor's disposable income is sufficient to

---

[1] See Debtor's Exhibits 1, 2 and 4.

permit him to fund a Chapter 13 plan that provides a 100% dividend to his unsecured creditors, this Court finds that granting relief to the Debtor under Chapter 7 of the Code would be a substantial abuse.  Accordingly, the Court will enter an Order dismissing this Chapter 7 proceeding unless, within 20 days of the date of the entry of the Order on this motion, the Debtor converts this case to a proceeding under Chapter 13.

### III.  CONCLUSION AND ORDER

For all the reasons cited above, the Court will grant the UST's motion to dismiss the case unless the Debtor chooses, within 20 days of the date of this Order, to convert the case to Chapter 13.

A separate Order will be entered in accordance with Bankruptcy Rule 9021.


Dated:   September 12, 2005            /s/ Dennis R. Dow
                                       THE HONORABLE DENNIS R. DOW
                                       UNITED STATES BANKRUPTCY JUDGE